SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF ERIE

INDEX NO. 813855-2026

UNITED STATES DISTRICT COURT
FILED
NOV 1 6 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

CC POWERS (PLANTIFF)

AGAINST

STATE FARM FIRE AND CASUALTY COMPANY (DEFENDANT)

**COMPLAINT (CIVIL)**

1. Please take notice that on May 13, 2025, my partner and I experienced a fire at our home, 31 Elm Street, Westfield, NY 14787. This is our primary and sole residence. The fire resulted in extreme smoke damage, preventing us from inhabiting the home. The kitchen was fully destroyed. Although no investigation was performed, the undisputed cause of the fire was and LG recalled stove. (Attachment 1 – Incident FOIL Docs/Complaint; Attachment 2 – CPSC Recall Notice) The property lies on a unique village location, with a carriage house, and small building where we ran our business (a small local takeout restaurant).

2. Also, undisputed, is the fact that there were two (2) financial institutions responsible for restoration: first, a forced-fire, limited-budget policy for the home structure, held by my partner, James Powers, with GAIC (Great American Insurance Co.) through his home mortgage with Lake Shore Savings Bank. The second, responsible for emergency needs and home contents, was my own $87k policy, with State Farm Fire and Casualty Company.

3. The GAIC policy was designed as a pay-then-reimburse plan. State Farm treated my policy in the same fashion. While they had the ability to advance much needed funds, they did not. Ultimately, due to the poor handling of vendors by State Farm, vendors were utilized solely for CLEANING and REMOVING items that were deemed non-restorable. No restoration work was completed by any vendor. The restoration work was ultimately completed by me, my partner, and various independent contractors and help.

The company utilized for cleaning was the State Farm Preferred Vendor, SMR (Service Master Restore). State Farm approved the work ahead of Lake Shore Savings.

The nature of this complaint will show damages created by State Farm due to Breach of Contract, unfair dealings, and lack of vendor management. While not applicable in Federal

Court, State Farm is in violation of NY Insurance Law 2601 (unfair claims settlement practices). The damages and declaratory judgement sought reflect interruption and loss to my business interruption, as well as the worsening of my SHARED, and therefore, known, health issues.

4. This Complaint asserts that State Farm resorted to delay and deceptive tactics to avoid paying claim charges they were legally responsible for in a timely fashion, if at all.

5. On May 14, 2025, the day after the fire, I contacted Kathleen Crosby at my State Farm Agent's (Jim Baglieri) office. She had me call the claims line where I then spoke with Claims Specialist, Eric Abernathy; Florida license number: G088767.

Eric advised that my case would require 'coordinated claims' due to there being two (2) responsible insurance companies. In the interim, he set up claims against my 1. Renter's/Homeowner's Policy, 2. Business Policy, and 2. PLUP. The PLUP claim was quickly closed by State Farm. The Business Policy was quickly challenged as well, as being irrelevant. Only when, on 5/27/25, Claims Specialist, Ulyssa, approved my Dell desktop computer for reimbursement on the residential claim (which to date has still not been received), did State Farm find a reason to continue with the Business Policy; not to pay it, but to re-introduce delay tactics to avoid paying the claim. On-site for SMR was Desi, who approved to State Farm over

the phone, while at the affected property. (Attachment 3 – 5/27 Letter)

No known coordination was ever in place between State Farm and GAIC for attempts at cleaning and restoration. Therefore, rather than following the industry best practice for this type of claim separation – removing all contents, cleaning structure, clean contents off-site and return – did not occur. Rather, the unsupervised, 'preferred' partner, SMR, attempted to clean the contents AROUND the structure; without a clean structure'. This was unsuccessful, and after 3 trips, full cleanliness of the contents was never achieved. We continued to find soot, ash, and stains on the bottoms of dishes until everything was re-cleaned by us.

Cleaning of the primary living and fire source areas (first floor) did not begin by SMR until almost mid-June. The delays were not explained by Rick the PM (Project Manager). In hindsight, it was found that SMR was waiting for approval by GAIC for structure work. During this waiting period, State Farm did not monitor, nor advise their vendor. Through lack of communication, the PM remained unavailable or indisposed.

6. In addition to mismanagement, large than required amounts were paid out to State Farm's partners; against the EXPLICIT and written direction to State Farm Claims, as well as to my Agent's office. During the time period of June, 2025 and August, 2025. I made multiple

requests to SMR and State Farm to address inaccurate billing statements proposed by SMR for State Farm and GAIC. These invoices showed multiple errors and duplicate billings. Numerous items were found to be in one, but duplicated in the following categories:

1. Billed to State Farm for Cleaning
2. Billed to GAIC for Cleaning
3. Billed for Restoration and Disposal

Simultaneously, workers were taking items to their personal homes after being declared NON-restorable.

Many labor hours billed, prior to mid-June, with no PM, were spent by staff hanging out in our parking lot while also smoking marijuana. I do not have an issue with these employees, this was clearly due to a lack of leadership and planning of daily work.

7. At least twice during this experience, State Farm OVERPAID vendors from my policy. SMR brought in a sub-vendor, Renewal Claim Solutions, with ZERO oversight to remove 'linens and clothing' for off-site cleaning. Little information was provided to me. What was available was printed, nothing electronic to refer to during this hectic and stressful time. Clothing was to be returned in one (1) week. However, a month later, while I now also was over-seeing RESTORATION planning myself, I had to track down the sub-vendor to locate our clothing. I

was advised by the owner, Mark, that they would provide a CREDIT back to me directly of $2500. The overpayment would also account for my deductible of $500, so I would receive $2000. While that commitment was made mid-June, I did not receive the credit until mid-July. Please note that the actual credit given was approximately $1400+; significantly (25%) less than the committed $2500/2000. (Attachment 4 – Customer Service Letter email, estimate, & credit) Please note that while the final invoice was not issued by Renewal until 6/17/2025, State Farm not only overpaid, they paid 6 days earlier, on 6/11/2025.

Based on THIS overpayment with Renewal, as well as the initial billing errors I was witnessing, I gave State Farm clear verbal and written directions to NOT pay SMR until the invoice was reviewed and correct. My directions were flat-out ignored. Unbeknownst to me at the time, State Farm directly ignored my direction and issued payment IN FULL (as requested) on the same day as SMR's final clean in October, 2025. State Farm did not consult with me, nor did they review the invoice. When I asked why it was paid, I was told they assumed it was correct after three (3) visits.

8. Aside from the lack of cleanliness left behind, there was a large delay of the kitchen rebuild, funded by GAIC on a fixed-budget-forced-fire policy. GAIC provided availability to the funds in August, 2025. Due to a mis-management and time-delaying techniques, we had no upfront

credit available to pay a contractor upfront. Also, with delays, finding a contractor outside of summer in our rural area is difficult, if not impossible. Lake Shore Savings allowed us to purchase supplies for one focus area at a time (ie, drywall, painting, cabinets, etc), and that is how it was feasible for us to do all the restoration work; taking over one (1) year from the actual event. This does not even address the balances that were carried accruing with 30% interest.

State Farm, who had not reimbursed any meals outside of May, 2025, continued ZERO coordination efforts; as well as ZERO reimbursements for food, emergency housing, and lost household items. My emergency credit card was easily maxed out, not to recover, before the final cleaning ever occurred.

9. During the period of May, 2025 – November, 2025, State Farm asked for meal information multiple timed, by multiple 'claims specialists', in multiple formats. Of over $13k submitted, only five (5) meals were reimbursed. There was no kitchen for our use at home, a fact known by State Farm. Yet, they had me uselessly make the extremely time-consuming submissions for meal reimbursement:

1. No receipts, differential of pre & post cost of food based on calculations &

documentation of 2 months prior and 2 months post-event;

2 Individual receipts (original, not credit card) of all meals;

3. Credit card bills with individual charges made/paid to card.

Although these were all provided when requested in 2025, documents will show that State Farm did not begin investigating these claims until July, 2026; 14 months AFTER the tragic event.

Also, once State Farm began investigating in July, 2026, items were found on the SMR recordings, such as a Samsung laptop computer, that had not yet been acknowledged nor replaced by State Farm. The computer approved by State Farm residential on 5/27/2025, but never paid out was a Dell All in One Desktop. Replacement for neither computer has been paid out by State Farm to date.

10. After months of no response from State Farm, on 12/4/2025 I hired a local real-estate attorney to write a 10-day demand letter for all of the unpaid items:

1. Non-restorables date in the beginning of August

2. Meals

3. Already approved computer.

State Farm NEVER responded to this demand letter. (Attachment 5 – 10 day demand letter) I

threatened filing a NYS DFS complaint. On 12/26/25, a small but unexpected payment for undefined non-restorables was issued. A far cry from what was owed by State Farm. On 12/30/2025 I provided State Farm with information I planned to issue to NYS DFS, and on 12/31/2025, I officially filed complaint: CSB-2025-0168759 with the NYS Dept of Financial Services. In April 2026, I was notified of DFS's active involvement in my case. In July, 2026, I advised DFS that I would finalize pursuing my complaint through the NYS Supreme Court. This has since been moved to this federal court. (Attachment 5 – NYS DFS Complaint)

11. While working with DFS, it was found that evidence & information sent to them was diverted to or from, the intended email addresses and sent to various icloud accounts (unknown). Additionally, phone calls were intercepted by unknown individuals.

In June and July, 2026, 2 individual claims specialists admitted that they 'had not read' nor did they have access to the full claim. Additionally during this timeframe, I was disconnected to State Farms' claim system, as well as their payment system.

12. While ultimately, no claims may have been needed to be filed, State Farm's deceptiveness and failure to manage and pay on their responsible share has resulted in the failure of growth for my newer business, just established in July, 2023. This resides on the home which suffered

the smoke damage, and where office and official paperwork were stored and managed. I initially expected ½ days during the summer of 2025 to recover, however, the ½ days turned to full days until we were fully closed by 11/2025 to work on home construction still needed.

13. Unfortunately, during that time, as well as into 2026, my physical and mental health conditions worsened. Despite HIPAA, I made my struggles known to State Farm in May, 2025. They did not care. The insurance company that covered the lifetime of insurances needed since 1987, when I received my license, had failed me in my worst hour of need. Over a KNOWN SPSC recall, announced in 2/5/2025. State Farm did not look to even obtain the stove until AUGUST of 2025, 3 months after the event. By this time, the stove was gone, having been told by both State Farm and GAIC assessors to go ahead and discard the stove.

14. As a result of State Farm's inexcusable behavior, I am looking for professional licenses of those directly and knowingly involved in delaying my claim to have their professional licenses revoked. I also request punitive and exemplary damages in the amount of no less that $25 Million dollars. While this may seem like a large request, this complain is looking to not only seek personal retribution for my health and business damages, but also seeks REFORM of

State Farm's inadequate and deceptive practices with their policy holders. This amount references the scale of State Farm executive compensation structure.

15. Finally, as order of protection is requested. While and OofP may not be typical for this type of case, cause has been shown for its need in this specific case. As indicated during NYS DFS activity, interference with email and phone calls had already been noted. On 8/7/2026, use of NYS Mental Hygiene Law (Section 9:4.5) was illegally issued against myself. I was handcuffed and taken to UPMC CHQ for 12 hours. I was not admitted (no bracelet received). I was finally discharged and escorted off the hospital property, without a phone or credit cards, at 2AM on 8/8/2026. I have been billed by UPMC for this visit of 'unknown reason'.

I have issued 4 FOIL Requests for this information (3 denied, 1 pending) to obtain this order that referenced 'my obsession with State Farm' and the 'fire activity'. At this time, receipt of FOIL data, as well as my medical records are 'Pending'.

16. Conclusion: For the foregoing reasons, which is fully documented, and will be shown that State Farm intentionally sought to avoid investigation and payments due to this plantiff.

I respectfully ask the court to hold State Farm Fire & Casualty Company liable for this

unresolved claim, and as use this case as an example for all consumer-insurance company relationships.

Respectfully submitted,

CC Powers

November 13, 2026

# ATTACHMENT 1

# Incident Report

**Print Date/Time:** 07/30/2026 06:28
**Login ID:** ccso\wpd513

Westfield Police Department
**ORI Number:** NY0063200

**Incident:** **2025-00001232**

| | | | |
|---|---|---|---|
| **Incident Date/Time:** | 5/13/2025 9:10:43 PM | **Incident Type:** | Assist Fire/Rescue |
| **Location:** | 31 ELM ST<br>Westfield NY 14787 | **Venue:** | Westfield_V |
| **Phone Number:** | (585)721-7972 | **Source:** | 911 |
| **Report Required:** | No | **Priority:** | 2 |
| **Prior Hazards:** | No | **Status:** | In Progress |
| **LE Case Number:** | | **Nature of Call:** | HOUSE FILLING WITH SMOKE, UNK WHERE SOURCE IS |

Unit/Personnel

| Unit | Personnel |
|---|---|
| W1 | 512-Beckerink |
| W2 | 523-Mower |

Person(s)

| No. | Role | Name | Address | Phone | Race | Sex | DOB |
|---|---|---|---|---|---|---|---|
| 6 | Caller | CACCAMISE, ERICA | | (585)721-7972 | | | |
| 1 | Owner | Powers, James G | 31 ELM ST<br>Westfield NY 14787 | (239)309-5468 | White | Male | 01/08/1969 |
| 7 | Caller | Caccamise, Ericca L | 31 ELM ST<br>Westfield NY 14787 | (585)721-7972 | White | Female | 09/03/1971 |

Vehicle(s)

| Role | Type | Year | Make | Model | Color | License | State |
|---|---|---|---|---|---|---|---|

Disposition(s)

| Disposition | Count |
|---|---|

Property

| Date | Code | Type | Make | Model | Description | Tag No. | Item No. |
|---|---|---|---|---|---|---|---|

**512 NAR**

WPD IR# 2025-1232
Call Type: Assist Fire/Rescue
Date & Time: 05/13/25 @ 2110 hours
Incident Location: 31 Elm Street, Westfield, NY, 14787

On 5/13/2025 at approximately 2110 hours ID512 and ID523 were dispatched to 31 Elm St for a report of the home filling with smoke. Upon arrival patrols were met by Ericca Caccamise who stated everyone was out of the house, including pets and the fire appeared to have been extinguished. James Powers had stated that the stove had begun to catch on fire, but he had managed to get it put out before further damage was caused. Westfield Fire Department (WFD) arrived on scene and conducted a thermal hot spot check of the residence, which resulted in no further fire in the home. WFD then deployed exhaust fans in the residence to help clear the smoke filled rooms. Ericca stated that she had just flown into the Buffalo airport from a trip to Georgia and James had picked her up to come back home. When they returned back to 31 Elm St, James went into the Wanderlust business (29 Elm Street, Westfield, NY, 14787), which is adjacent to the residence, and Ericca went into the front door of the home and found it to be smoke filled and called 911. Both parties stated that the stove is an electric LG brand and has been known to have issues from the manufacturer. There is a lock button on the stove that is a known defect and has been faulty in past incidents. It is believed that while Jim and Ericca were on their way home, one of their cats jumped onto the electric stovetop and caused it to turn on and catch fire. WFD did not request the Chautauqua County Fire Investigation team, as the cause and nature of the fire was apparent. Ericca did inform patrols that she has started insurance claims with State Farm at this time and they may be in contact for police reports and photographs. ID512 did take photos of the stove and impacted kitchen area and uploaded them via Axon Capture.

Parties involved:

- James Powers. 1/8/1969. 31 Elm St Westfield NY, 14787. 239-309-5468
- Ericca Caccamise. 9/3/1971. 31 Elm St Westfield NY, 14787. 585-731-7972

Patrols involved:

- ID512 D Beckerink
- ID523 C Mower

# CAD Narrative

**05/13/2025 : 21:16:19 ccso\sd274 Narrative: WPD ON LOCATION STATES THEY TALKED TO THE HOMEOWNERS AND IT WAS A STOVE FIRE AND ITS OUT**
**05/13/2025 : 21:15:42 ccso\sd2005 Narrative: C293 REPORTING SMOKE SHOWING**
**05/13/2025 : 21:13:07 ccso\sd254 Narrative: CALLER ADVISED TO HAVE EVERYONE EVACUATE**

Complaint By: Ericca Caccamise; 31 Elm Street, Westfield; 716.224.3939

Complaint RE: FOIL Request Received 7/30/2026

Cause of Complaint: Incorrect information documented

Please note that for the FOIL request received on our home fire 911 call & emergency response includes inaccurate information.

On the 512 NAR:

1. My contact number at the time is listed incorrectly. The NXX is listed as '731' which is invalid. The NXX for that number was '721'.

2. It is not correct that I had already 'started insurance claims' with my insurance companies on the night of 5/13/2025. I did not speak with either of them that night. I spoke with my State Farm Agent's office (Kathy Crosby) and State Farm Claims (Eric Abernathy) the morning of 5/14/2025. This was also reported to my partner's insurance after 5/13/25, the date of the incident.

If information is incorrect at the beginning, it will never be correct. I appreciate an addendum/correction being posted to this publicly available information. Additionally, I appreciate it being shared with the oversight position responsible for FOIL requests, to ensure any training needs are met.

Thank you,

Ericca Caccamise

# ATTACHMENT 2

FEBRUARY 06, 2025

Injuries reported



## LG Recalls Electric Ranges Due to Fire Hazard

**Hazard:**
Front-mounted knobs on the recalled ranges can be activated by accidental contact by humans or pets, posing a fire hazard.

**Remedy:**
Consumers should contact LG for a free warning label and placement instructions. The label reminds consumers to use the Lock Out/Control Lock function on the range control panel to disable activation of the heating elements when the range is not in use.
View the LG instructional video regarding Control Lock/Lock Out feature at https://vimeo.com/1037322282.
Consumers are cautioned to keep children and pets away from the knobs, to check the range knobs to ensure they are off before leaving home or going to bed, and not to leave objects on the range when the range is not in use.

**Units:**
About 500,000

**Consumer Contact:**

Website: https://lgecares.com/rangerecall

E-mail: lgrange.recall@lge.com

Phone: (800) 399-3265

# ATTACHMENT 3

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

State Farm®

May 27, 2025

Ericca L Caccamise
31 Elm St
Westfield NY 14787-1401

**State Farm Claims**
PO Box 106169
Atlanta GA 30348-6169

| | | |
|---|---|---|
| RE: | Claim Number: | 52-84R7-35T |
| | Date of Loss: | May 13, 2025 |
| | Our Insured: | Ericca L Caccamise |

Dear Ericca L Caccamise:

Please accept this email as confirmation your computer and printer can be claimed on your renters policy. Should Service Master not find your items in repairable condition, your renters policy will cover up to $10,000 for replacement of these items.

If you have questions or need assistance, call us at (844) 458-4300 Ext. 63389.

Sincerely,

Ulyssa Ortega
Claim Specialist
(844) 458-4300 Ext. 63389
statefarmfireclaims@statefarm.com

*For your protection, when emailing State Farm, please do not include sensitive personal information such as Social Security Number, credit/debit card number (financial account number), driver's license number, or health/medical information in an email. Please contact us at (844) 458-4300 Ext. 63389 to discuss sensitive information.*

State Farm Fire and Casualty Company

Take advantage of our self-service options
Go to statefarm.com® to easily review claim status, select a repair facility, reserve a rental vehicle, update communication and claim payment preferences, and many other insurance services.

# ATTACHMENT 4

NOT SMR - 'LINEN' ?2500 refund

Renewal
CLAIM SOLUTIONS
of
Upstate New York &
Greater New England

| | |
|---|---|
| **Customer(s) Name(s)** | Caccamise, Ericca |
| **Claim #** | 5284R735T |
| **Property Address** | 31 Elm St, Westfield, NY 14787 |

Dear Ericca,

Thank you for allowing our team to serve you during this difficult time. Please note that we have submitted an invoice for our services to your insurance adjuster, Ulyssa Ortega. Details on that invoice are below.

Depending on your insurance carrier, payment may be sent directly to us. However, sometimes it is mailed to you. Should you receive our payment, please contact me at x102. The check may have your name on it, in which case you'll need to endorse the check before mailing to us.

We must have either payment or confirmation of payment before final delivery of your order. If you have any questions on our invoice or payment procedures, please reach out to me at x102 or via email at office@renewalofneast.com.

Regards,

Breanne Pieszak

Breanne Pieszak
*Restoration Administrator*
800-960-5022 x102
office@renewalofneast.com

**INVOICE DETAILS**

| | |
|---|---|
| **Invoice #** | 225146 |
| **Total Amt Due** | $10,231.69 |
| **Billed On** | 06/19/2025 |

**THIS IS NOT A BILL**

Outlook

## Re: Textile Invoice

**From** ERICCA CACCAMISE <ecaccami@gmail.com>
**Date** Thu 6/26/2025 2:48 PM
**To** Office Renewal <Office@renewalofneast.com>

We will be matching this up with what is received back.
This shows to anticipate 78 boxes. We received 18 today.
Please verify. I do not believe this is correct.
If you feel any numbers are incorrect, now is your opportunity to correct.

---

**From:** Office Renewal <Office@renewalofneast.com>
**Sent:** Thursday, June 26, 2025 11:22 AM
**To:** ecaccami@gmail.com <ecaccami@gmail.com>
**Subject:** Textile Invoice

**RE CLAIM 5284R735T**
**Caccamise, Ericca**
**Westfield, NY**

Please see attached invoice as requested. This final invoice was submitted to State Farm on 06/19/2025.

The initial estimate that was sent to the adjuster on 06/02/2025 was preliminary and did state that our final invoice would be provided at a later date. It is not typical for an adjuster to pay out on that number before receiving the final invoice, but that is what occurred on this claim.

I have documented and communicated to my team that you have requested a call back today from management.

--

Renewal CLAIM SOLUTIONS of Upstate New York & Greater New England

**Renewal Claim Solutions**
**of Upstate NY & Greater New England**
*Formerly NARD by Urban Valet*

**Lauren Harrison**

**Breanne Pieszak**

800-960-5022 x102
www.renewalofneast.com

6:27

Adobe Acrobat Sign Sign In

Caccamise_Reimbursement Agreement PDF

Renewal
CLAIM SOLUTIONS

| | |
|---|---|
| **Insured** | Caccamise, Ericca |
| **Claim** | 5284R735T |
| **Property Address** | 31 Elm St, Westfield, NY 14787 |

In a good faith effort to resolve the concerns regarding textile restoration services, a compensation value of $2,500 has been proposed and accepted. Please see below breakdown for the amount owed on this credit:

| | | |
|---|---|---|
| Invoice Submitted 6/19 | | $ 10,231.69 |
| Check Received 6/20 from State Farm | - | $ 8,800.00 |
| Deductible | - | $ 500.00 |
| **Remaining Balance** | | **$ 931.69** |
| | | |
| Agreed Credit | | $ 2,500.00 |
| Remaining Balance sent to insured per State Farm | - | $ 931.69 |
| **Direct reimbursement from Renewal** | | **$ 1,568.31** |

Was to be $2500 less $500 deductible

All item-related issues for this claim have been addressed. By signing below, the insured acknowledges that Renewal Claim Solutions is released from any future reimbursement liability related to this claim.

Signature: ____________________ Date: ____________________

ents.adobe.com

**Renewal Claim Solutions of NY & Greater New England**

Formerly NARD by Urban Valet

| | | | |
|---|---|---|---|
| Insured: | Caccamise, Ericca | Home: | (585) 721-7972 |
| Property: | 31 Elm St<br>Westfield, NY 14787 | E-mail: | ecaccami@gmail.com |
| Estimator: | Breanne Pieszak | Business: | (800) 960-5022 |
| Company: | Renewal Claim Solutions of Upstate NY & Greater New England | E-mail: | office@renewalofneast.com |
| Business: | 106B Evans Street<br>Hamburg, NY 14075 | | |
| Contractor: | | Business: | (800) 960-5022 |
| Company: | Renewal Claim Solutions of NY & Greater New England | E-mail: | office@renewalofneast.com |
| Business: | 106B Evans St<br>Hamburg, NY | | |

**Claim Number:** 5284R735T **Policy Number:** **Type of Loss:** Fire

| | | | |
|---|---|---|---|
| Date Contacted: | 5/27/2025 11:54 AM | | |
| Date of Loss: | | Date Received: | 5/27/2025 11:54 AM |
| Date Inspected: | 5/28/2025 11:54 AM | Date Entered: | 6/17/2025 11:51 AM |

| | |
|---|---|
| Price List: | NYBU8X_JUN25<br>Restoration/Service/Remodel |
| Estimate: | CACCAMISE-WESTFIELD |

***INVOICE/ORDER #225146***

Renewal Claim Solutions of Upstate NY & Greater New England (Formerly NARD by Urban Valet) is a specialty contents vendor serving NY, PA, VT, NH & MA. 20+ years experience restoring textiles, electronics & collectibles. **TAX ID 22 3337279**

# ATTACHMENT 5

SEACHRIST LAW OFFICES, P.C.
JOEL H. SEACHRIST

31 East Main Street | Westfield, New York 14787
716.326.2700 | Fax 716.242.7170
Email jseachrist@seachristlaw.com

December 4, 2025

Lisa Huell
State Farm Claims
P.O. Box 106169
Atlanta, GA 30348

State Farm Insurance Companies
Attn: Legal Department
1 State Farm Plaza
Bloomington, IL 61710

**Re:** **Claimant: Ericca Caccamise**
**Policy Number: 98C8P4423**
**Claim Number: 52-84R7-35T**
**Date of Loss: May 13, 2025**

Dear Ms. Huell & Counsel:

I have been retained by Ericca Caccamise in connection with the above-referenced fire loss that occurred on May 13, 2025. Ms. Caccamise has been a loyal State Farm policyholder for thirty-eight (38) years. Regrettably, the manner in which State Farm has handled this claim has fallen far short of the standards one would expect from a company that has benefited from decades of her premiums and trust.

Despite the passage of more than six months since the date of loss, State Farm has failed to issue payment on multiple documented and undisputed portions of the claim. These undisputed items total several tens of thousands of dollars and include, among other things, undisputed personal property losses and additional living expense reimbursements that have never been legitimately questioned. Instead of honoring its contractual obligations, State Farm has engaged in a pattern of delay tactics that can only be described as bad faith:

1. Repeatedly transferring Ms. Caccamise from representative to representative with no continuity of handling;
2. Demanding the same documents (inventory lists, receipts, proof of ownership, contractor estimates, etc.) on multiple occasions even after they have been provided in complete form;
3. Failing to issue written explanations for non-payment or partial payment as required by New York Insurance Law §2601 and 11 NYCRR 216; and
4. Refusing to advance undisputed amounts while "investigating" items that have been satisfactorily proven months ago.

This conduct is not only unreasonable, it is prejudicial to my client's ability to rebuild her life after a catastrophic fire. The New York Unfair Claims Settlement Practices regulations (11 NYCRR 216.6) make clear that an insurer must promptly pay the undisputed portion of any claim. State Farm's refusal to do so violates both the letter and spirit of those regulations.

I hereby demand that, within ten (10) days of the date of this letter, State Farm issue payment in full for all undisputed amounts owed under the policy, together with applicable interest from the date each payment became due. Should State Farm continue to delay or deny payment without substantial justification, we will have no choice but to commence litigation seeking not only the policy benefits but also consequential damages, attorney fees, and extra-contractual damages available under New York law for bad-faith claims handling.

Ms. Caccamise has been more than patient. It is time for State Farm to stop playing games and to honor its obligations to a 38-year customer who has never given the company reason to doubt her honesty or cooperation.

Please govern yourselves accordingly. All rights and remedies are expressly reserved.

Sincerely,

Joel H. Seachrist

JHS:sjs
c: Ericca Caccamise
Jim Baglieri, State Farm Agent

# ATTACHMENT 6

Exhibit B

New York State Department of Financial Services
Consumer Complaint Case: CSB-2025-01687593
Date Submitted: 12/31/2025

| | |
|---|---|
| **Complaint Type** | |
| Which product or service best describes your complaint? | Insurance Company |
| Are you a representative filling out this form for someone else? | No |
| I authorize the entity or individual named in this complaint to furnish to the Department of Financial Services any information related to this matter. | Yes |
| **Who is the person with a complaint?** | |
| Name: | Ericca L Caccamise |
| Address: | One State Farm Plaza |
| Business Name: | State Farm |
| City/State/Zip: | Bloomington IL 61710 |
| Phone: | (158) 572-1797 |
| Fax: | |
| Email: | ecaccami@gmail.com |
| **Complaint Details** | |
| What type of insurance is your complaint about? | Property and Liability |
| What type of person/entity is your complaint about? | Insurance Company |
| **Who is the person/entity you are complaining about?** | |
| Insurance Company: | State Farm Fire and Casualty Company-25143 |
| **What is the Policy/Claim Information?** | |
| Policy Number: | |
| Policy Holder Name: | Ericca Caccamise |
| Claim Number: | 52-84R7-35T |
| Date of Loss/Service: | 05/13/2025 |
| Is your policy being cancelled or terminated? | No |
| Is this related to a declared disaster? | No |
| **Additional Information** | |
| Is a Court or Legal Action pending for this matter? | No |
| Have you submitted this matter to another agency or attorney? | Yes |
| Name: | Joel Seachrist |
| Title | Attorney |
| Address: | 31 East Main Street, Westfield, NY 14787 |

?

| | |
|---|---|
| Phone: | (716) 326-2700 |
| Email: | |
| Are you a whistleblower? | No |
| Is this complaint regarding Elder Financial Abuse? | No |
| Please enter the details of your complaint here | |
| Please see the attached summary of issues (this is not comprehensive) that was sent to State Farm today. | |
| What do you think would be a fair resolution to your complaint? | |
| I honestly could not say. I have put so much effort in and the effects of their negligence are compounding for me financially, health-wise, and now, with the reputation of our small business. I don't even know what the check is for that they issued, and items have still not even been verified as being received from the cleaning company. I cannot really answer, because there has been such a lack of response, and I do not know how long this will go on and how bad it will get. I am sorry. I need more information before I say a number, and they just issue a check without care or correction. | |
| How were you referred to the Department of Financial Services? | I googled who is in charge of insurance companies in New York State |
| **Supporting Documentation** | |
| | 12 01 25 SF Letter Closing Business Claim 19T.pdf(131Kb) |
| | 12 26 25 SF Voicemail additional items to age.pdf(744Kb) |
| | DFS COMPLAINT 12 31 25 Summary to SF.pdf(182Kb) |
| | Letter to SF from Joel 12 04 26.pdf(713Kb) |
| | SF Approval for Computer Replacement 05 27 25.pdf(120Kb) |
| | State Farm Letter 12 26 25 advising of 10k check.pdf(191Kb) |

This summary and sample data is being provided in response to the 12/26/25 letter (attached) received from Noah Blumenthal, State Farm Claims Specialist. At the time the letter was received, the attached voicemail message/transcript was also received. The transcript lists the names Todd and Noah, however, in listening to the message, it appears to be a female voice and the name is inaudible. This is the only response provided by State Farm to the attached, 12/4/2025 letter from my attorney, Joel Seachrist.

This response, along with a copy of this summary will be included with my formal complaint to NYS DFS as State Farm has acted repeatedly, and continues to act. in violation of NYS Insurance Law.

If received, I will deposit the mentioned $10k check for immediate use.
Noah's letter noted inaccurately that this 'settles my claim'.
It does not. I have no specific details associated with this letter, however, submitted claims that are legally due to me greatly exceeding this number.
The attached voicemail confirms that additional items need to be reimbursed. State Farm knows that I cannot age a spreadsheet that I cannot access. I am blocked from the online claims database and have been provided with no alternative method to view or update this information. Another tactic to make it difficult for me to receive the money that is legally is due to me, for protection I paid for from State Farm, in a timely fashion.

Date of Event: 5/13/2025
The prematurely agreed upon timeframe of recovering from this event was 5/13/25 until 12/31/2025.
However, the actions of State Farm have REPEATEDLY not supported this completion date. Based on State Farm's failures, there are now multiple delays in construction. This timeline is required to be revisited.
SF became non-compliant with our 12/4/25 demand letter on 12/14/25. The letter was received via 2-day priority mail at the SF Atlanta and Illinois offices. The letter was mailed 1st class to the Penfield office.

**Failure to Pay Money Legally Due in a Timely Fashion, or NOT AT ALL**:
*COMPUTER Approved but never paid by SF – ADDITIONAL TACTICS FOLLOWING APPROVAL TO DELAY PAYMENT
On 5/27 $10k was approved by Ulyssa on the residential side for my computer. See 5/27 letter from Ulyssa. Desi from SMR advised Ulyssa of the approval. I worked with Kathy at my agent's office to understand what info was needed from my computer to reimburse, as I was not in a position (*and now SF has placed me in a worse one*) to purchase one up front. I sent/uploaded the requirements. However, no check was ever sent. No response was given, even with my continued follow ups, on the residential side.
However, I received continuous calls from Evangeline on the business side indicating I would have to submit my tax records in order to receive reimbursement for my computer. To date, NO PAYMENT has been received, and as per the later noted call/letter from

Juan/business, the business claim is now closed, without any reimbursements for coverage. $0.

*FOOD $0 ZERO reimbursement received for 7 ½ months of displacement with no kitchen.

*NON-RESTORABLE aged list - $0 ZERO reimbursement received -The current list was identified and provided (with visual documentation) by Pro-Clean DBA Service Master Restore (SMR). I was responsible solely for aging the items.
Following his 12/4 letter to SF, after ZERO response from SF, Seachrist left a voice mail on 12/19 for inhouse council at SF. On 12/26, the $10k letter arrived electronically.
Additional information for the items that had been aged by me in Aug/Sept was NEITHER requested by SF, NOR provided by me. As the database contained everything from furniture to used chapstick, I used the 80/20 Effort Rule and requested partial payment.
It was not issued; I received a call to continue aging.
I requested a partial payment; I received a letter to continue aging.
I requested a partial payment; NOTHING WAS SENT, and no data was changed.
However, following Seachrist's letter and follow-up call to SF legal, SF issued a small check for amounts that were legally due to me OVER 4 months earlier.
These actions show State Farm's blatant disregard for NYS law. The undesignated partial payment for $10k was the only response State Farm sent, after two notifications of NYS law violations. To date, ZERO funds have been received by me.

**Creating Confusion to Not Pay or Delaying Payment of Money Legally Due to Me:**
If this is not a delay tactic, then it is complete incompetence on the part of multiple SF departments, managers, and claims representatives. While this fire was in our residence, we have business related items (office w/computer) at that location for our take-out restaurant. Claims were opened within both the Residential and Business departments, however, neither of them took any responsibility to fully understand and process the claim correctly for this event.
*A defining example of this was when I received a call from Juan, a manager on the Business side, on 11/26, the night before Thanksgiving. I pre-maturely provided Juan kudos for taking ownership and looking to help resolve this claim. Over 6 months AFTER the Event, Juan indicated this would flow much better if it was solely set up as a residential claim. I indicated that while I didn't disagree, I needed him to ensure that he would transfer this appropriately to the Residential side as there seemed to be so much confusion within SF. He wholeheartedly agreed. See the attached letter dated 12/1/25, from an individual I never spoke with. He indicated he spoke with me, and this claim was now closed on the business side.
7 and ½ months after the event, ZERO dollars have been paid to me from my business policy. No one on the residential side has followed up with paying the amount the Business side claimed they were confused by. There were no specific claims to the business side other than the request for my computer equipment, for which $0 ZERO Dollars have been issued by SF.

**Changing Claim Reps Continuously & Multiple Requirements to Complete Needless & Time-Consuming Tasks**

*SF separates the processing of emergency funds, housing, food, claims from those for dwelling contents; AND there are multiple SF policies that were initially identified for this incident; along with the fact that there was another insurance provider for the structure of the building - NO ONE PERSON from SF, ever assumed responsibility of coordinating internally, yet alone, with the other insurance company. No SF employee escalating due to a lack understanding of what should be assigned to what policy. This allowed SF to continuously create artificial delays. I continually tried to escalate by looking to obtain internal SF emails for escalation. I also repeatedly tried to work with my agent, Jim Baglieri, to gain his assistance. He eventually advised me that he is Sales and that Lisa Buell in Claims was not responding to him either, so he was unable to help me.

*Please note; The additional insurance provider, responsible for the structure, completed our claim and issued the full construction check in August, 3 months after the event. However, note that this is reimbursement based policy.

**As I have at least 2 fully maxed out credit cards, accruing interest and penalties, while waiting for my SF deposit, I can no longer afford to provide deposits or purchase materials to continue kitchen construction, until ALL reimbursements are received from SF. Based on this, the EVENT timeframe will need to continue until SF has appropriately resolved my claim.

I am not sure overall how many claims representatives were assigned, in and out, to the various claims with this event. I spoke mainly with Ulyssa and Shontell.

*In August, I began the time-consuming process of uploading and submitting reimbursements for meals. I spoke with Ulyssa prior to this process. She indicated I actually needed to use at least 2 months of receipts PRIOR to the fire and 2 months after. The delta would be my monthly reimbursement. $3500/month for 7.5 months was the calculation. $26,250.

I then completed that time-consuming process, uploading all the documents, with ZERO success. ZERO dollars were reimbursed.

Ulyssa disappeared and Shontell was now the active claim rep.

Shontell indicated that since we had access to our stove at the restaurant, I did not qualify for meal reimbursement. The restaurant that we had to cut our operating hours by 50% in order to function, survive, and begin to recover. NO funds have been provided to me by SF to 'rent' the operation of my restaurant to provide meals when we are not open. The cost of operating the restaurant would greatly exceed the reimbursement of my meals. Additionally, there are health code laws that make this an impossible request.

Shontell agreed but stated for meals purchased at our restaurant she needed not only the paid receipt, but also the actual credit card billings to show the money directly to the bank. SF never seemed to understand that this is an extremely rural area of WNY. There are NO 24 hour anything, most restaurants close multiple days. In order to obtain regular, continuous, healthy meals over a long period of time, so again, I went through ANOTHER time-consuming activity of providing this information to Shontell. She responded saying

ONLY 4 receipts match. Nothing else would be reimbursed because they don't match. Less than $200 is what she indicated she would reimburse for 7.5 months of food. She delivered this information to me, while I was in Walmart, unprepared.
$0 ZERO dollars have since been received for this. Not even the 4 receipts she said matched.
I have tried continuously, over months, to escalate to Lisa Huell with ZERO response.

Additionally, SF failure to coordinate not only internally and externally with parties created repeated delays, with the FINAL cleaning by Service Master Restore (SMR) not occurring until October, 2025 - 5 months after the incident. This allowed soot to sit and ruin additional items, as well as continually permeate the smell throughout the house, that we are still working to remove through restoration (not with State Farm). Due to this, as well as the issues above, there are additional NON-RESTORABLE items that should have been identified and provided to SF by SMR – I have no online access to confirm if this has been completed.
This includes, but is not limited to: Ipad, Samsung laptop, desk, misc office, $1k to James Powers for damages to personal property, etc..
**THESE ITEMS HAVE YET TO BE ACKNOWLEDGED BY SF* However, I will put forth ZERO additional effort collecting and providing data until State Farm begins acting in a legal and ethical manner and begins my long overdue reimbursements.

State Farm also needs to provide me with an update, which I have requested, however, not received, the status of the payment issued to SMR (Pro-Clean DBA Service Master Pro).
Prior to SF receiving a submission from SMR, I had reviewed the extensive DRAFT invoices. The amount of errors were ASTRONOMICAL. I spent hours with the site lead to correct. I then had to invite the owner and project manager to review and correct the invoice. HOURS of time and effort.
Ultimately, there were items that were fraudulently billed to SF. I told Ulyssa I was not approving payment. I told Shontell and updated the claim and Lisa. However, Shontell ultimately released the payment to SMR. I asked her to cancel it, however, I now need to know if there is still an outstanding liability with SMR.
I am not sure if the check was mailed, I did not receive it. If the below check has been cashed, it has been done so illegally. As an 'AND' in the payment line, my signature is required by law. It was not provided.
**PLEASE NOTE THAT I REMOVED $10K OF INCORRECT CHARGES FROM THE SMR INVOICE BEFORE IT EVER REACHED SF. THERE WOULD HAVE BEEN ADDITIONAL REMOVED, HAD SF NOT ISSUED PAYMENT.
**PLEASE NOTE ALSO, THAT THE FIRST INVOICE SF paid so quickly to the off-site clothing cleaning company was paid off an ESTIMATE. NOT a final invoice.

**Date Issued:** 10/23/2025

**Paid to:** ERICCA L. CACCAMISE & PRO CLEAN UNLIMITED, INC.

**Payment method/number:** Paper/128754441J

**Amount:** $9,036.47 Fire or Lightning - Personal Property

As a continuous customer of State Farm for over 38 years, it would be a welcome change if reimbursements were issued as promptly and with the same concern to your customers as they are sent for fraudulent charging vendors.

When I tried to send this document yesterday, SF saw some of my challenges when the incorrect draft was sent. I am operating with failing tools, and it is negatively affecting various areas of my life, both personal and professional. Due to lack of support and response from SF, my financial and living situation is falling into complete disarray. My credit line is tapped. My credit score has greatly dropped.

I am glad of the delay in sending this document a day due to the failure, as it did afford me the opportunity to share the experience of having my credit card denied. In a small town, my business lives and breathes by quality and our reputation. SF is now affecting the perception of my business in a negative fashion.

Additionally, I have been very upfront about the challenges I have had with trauma and mental health care, with State Farm. Multiple reps, multiple calls, multiple requests. As the calls continued, but lack of legally required reimbursements was provided, I requested SF stop calling me without pre-scheduling. I needed to prepare and be in a safe place for the phone calls as they had become extremely cold and inflexible.
NO's were stated, and there was NO one to escalate to. In August, I was placed under medical care. One of these calls, with Shontell, resulted in me having a breakdown in the produce section of Walmart.
No matter how many times I requested SF to pre-schedule a call to review, they refused to grant me this courtesy.

Additional charges accruing from SF handling of this event that will need to be funded:
On-going medical care and prescriptions
Accruing late fees and interest

3:06

+1 (844) 458-4300

Unknown - Dec 26, 2025 at 10:50 AM

00:00 -00:49

Add Contact

Report Spam

Transcript

Hello, Erica, this is Todd, calling with State Farm calling on behalf of your claim owner that we have here. Um, Noah, just calling to let you know that

Favorites Recents Contacts Keypad Voicemail

for some content, um but it

3:08

+1 (844) 458-4300

a payment was released for some content, um but it does look like there was a few other items that we needed additional information, um, on those items, which is pretty much just the ages, so if you. For those items, then we can release additional funds. Um if you do have questions, you can contact us at our main line, which is 844-458-4300 or you can reach out to Noah directly. Um his extension is 62228. Thank you have a great day.

Favorites Recents Contacts Keypad Voicemail

3:06

< +1 (844) 458-4300 >

Unknown - Dec 26, 2025 at 10:50 AM

00:00 -00:49

Add Contact

Report Spam

Transcript

Hello, Erica, this is Todd, calling with State Farm calling on behalf of your claim owner that we have here. Um, Noah, just calling to let you know that

Favorites Recents Contacts Keypad Voicemail

for some content, um but it

claim owner that we have

3:08

< +1 (844) 458-4300 >

a payment was released for some content, um but it does look like there was a few other items that we needed additional information, um, on those items, which is pretty much just the ages, so if you. For those items, then we can release additional funds. Um if you do have questions, you can contact us at our main line, which is 844-458-4300 or you can reach out to Noah directly. Um his extension is 62228. Thank you have a great day.

Favorites Recents Contacts Keypad Voicemail

To the Honorable Judge Vilardo:

Enclosed, please find the Complaint for case 1:26-cv-01760-LJV, as ordered on 10/22/2026.

Respectfully,

CC Powers

11/13/2026

U.S. POSTAGE PAID
PM
WESTFIELD, NY 14787
NOV 13, 2026

UNITED STATES POSTAL SERVICE

14202

**$19.05**

RDC 01 0 Lb 7.90 Oz S2324A500470-08

**UNITED STATES POSTAL SERVICE®** | **PRIORITY® MAIL**

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com.*

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

EXPECTED DELIVERY DAY: 11/16/26

USPS SIGNATURE® TRACKING #

9510 8158 3817 6317 5882 86

**FLAT RATE ENV**

ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSURED**

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH
how2recycle.info

**UNITED STATES POSTAL SERVICE®** | **PRIORITY® MAIL**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM:
31 Elm St. #1
Westfield, NY 14787

USDC - WDNY
NOV 16 2026
BUFFALO

TO:
The Honorable Judge Vilardo
US District Court Judge
Robert H. Jackson US Courthouse
2 Niagara Square
Buffalo, NY 14202

Label 228, December 2023 FOR DOMESTIC AND INTERNATIONAL USE

26 CV 1760

This packaging is the property of the U.S. Postal Servic